# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT K. DEE, JR., | |
| Plaintiff, | CIVIL ACTION NO. 05-CV-1342 |
| v. | (JUDGE CAPUTO) |
| BOROUGH OF DUNMORE, et al., | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court are two post-trial motions by Defendants: (1) Defendants' Motion for Judgment as a Matter of Law, Motion for a New Trial, and Motion to Alter Judgement. (Doc. 100); and (2) Defendants' Motion to Stay Proceedings to Enforce Judgment Pending Disposition of Post Trial Motions (Doc. 101). For the reasons discussed below, the Defendants' motions will be granted in part and denied in part. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

**I.     Factual Background**[1]

In June 2005, Plaintiff Robert Dee ("Dee") was employed by Dunmore Borough as the Assistant Fire Chief. (Trial Tr. vol. 3, 35:21-23.) Defendant Dunmore Borough is a

---

[1] The trial transcript in this case is docketed as five separate items, and will be referred to in this Memorandum as follows: (1) voir dire and opening statements on January 4, 2010, Doc. 98 ("Trial Tr., vol. 1"); (2) witness examination on January 4, 2010, Doc. 87 ("Trial Tr. vol. 2"); (3) proceedings on January 5, 2010, Doc. 99 ("Trial Tr. vol. 3"); (4) proceedings on January 6, 2010, Doc. 104 ("Trial Tr. vol. 4"); (5) proceedings on January 7, 2010, Doc. 106 ("Trial Tr. vol. 5").

Pennsylvania municipality. (Amend. Compl. ¶ 2; Answer ¶ 2.) Defendants Michael Cummings, Joseph Talutto, Frank Padula, Leonard Verrastro, and Tom Hennigan were at all relevant times members of the Dunmore Borough Council. (Amend. Compl. ¶¶ 5-9; Answer ¶¶ 5-9.) Defendant Joseph Loftus ("Loftus") was at all relevant times Borough Manager for the Dunmore. (Amend. Compl. ¶ 4; Answer ¶ 4.)

In 2005, Loftus began an investigation into the credentials and training of the employees of Dunmore for the purpose of obtaining a discount on insurance premiums. (Trial Tr. vol. 4, 162:25-163:11.) During that investigation, it was discovered that Dee did not have training as an emergency medical technician ("EMT"). (Trial Tr. vol. 4, 174:8-19.) Loftus believed that Dee's failure to be certified as an EMT meant that he did not comply with the training requirements for a fireman under Dunmore's Collective Bargaining Agreement. (Trial Tr. vol 4, 195:13-23.) Loftus had no authority to suspend or remove Dee from the schedule. (Trial Tr. vol. 4, 196:3-13.) On June 27, 2005, Loftus presented the information he had gathered to the Borough Council and the council voted to suspend Dee with pay without first having a hearing. (Trial Tr. vol. 4, 177:4-18.) Defendants presented evidence at trial that the immediate suspension was necessary as an emergency. (Trial Tr. vol. 2, 9:7-8; Trial Tr. vol. 4, 178:21-179:2.)

Information about Dee's suspension, which should have been a confidential personnel matter, was published by the Scranton Times newspaper. (Trial Tr. vol. 3, 43:1-9.) Defendants denied leaking the information to the press. (Trial Tr. vol. 2, 11:16-22; Trial Tr. vol. 4, 180:3-5.) Ultimately after a hearing held on July 6, with Dee present, the Defendants determined that EMT training was not required for a fireman like Dee hired in before 1990. (Trial Tr. vol. 2, 9:4-6.) Dee was reinstated and did not suffer any losses

2

of pay or benefits. (Trial Tr. vol. 3, 63:2-12, 66:14-16.) Dee asserted that as a result of the suspension he suffered anxiety and humiliation. (Trial Tr. vol. 3, 38:5-13.)

## II. Procedural Background

Dee filed the present action on July 5, 2005. (Doc. 1.) The action proceeded to trial before a jury, beginning on January 4, 2010. (Doc. 98.) The jury awarded $150,000 in compensatory damages against Dunmore Borough for the violation of his procedural due process rights. (Doc. 95.) The jury also awarded punitive damages in the amount of $1,000 against each of the individual defendants. (Doc. 95.) Defendants filed the present motions on February 3, 2010. (Docs. 100, 101.) These motions have been fully briefed by both sides and are now ripe for disposition.

## LEGAL STANDARD

### I. Renewed Judgment as a Matter of Law (Rule 50)

Rule 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motions. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

FED. R. CIV. P. 50(b). "In order to prevail, the moving party must show that the jury's findings, presumed or expressed, are not supported by substantive evidence, or if they [are], that the legal conclusions implied [by] the jury's verdict cannot in law be supported by the findings." *Moore v. Susquehanna Area Regional Airport Authority*, No. 1:02-cv-

0535, 2005 U.S. Dist. LEXIS 45023, *7 (M.D.Pa. Sept. 30, 2005) (citing *Valentti v. Allstate Ins. Co.*, 243 F. Supp. 2d 221, 223 (M.D.Pa. 2003)).

> In considering whether the evidence at trial was sufficient to sustain the jury's verdict, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Although judgment as a matter of law should not be granted liberally, a mere scintilla of evidence is insufficient to sustain a verdict of liability. The Court is not to ask whether there is literally no evidence supporting the verdict, but instead whether there is evidence upon which the jury could properly find a verdict for the prevailing party. Accordingly, if the evidence of record is insufficient to support the jury's verdict, then motion for judgment as a matter of law should be granted.

*Id.* at *8 (citations omitted). A motion for judgment as a matter of law should be granted if, "viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Ambrose v. Township of Robinson*, 303 F.3d 488, 492 (3d Cir. 2002) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).

**II.    New Trial (Rule 59)**

Under Rule 59(b), motions for a new trial must be filed within twenty-eight (28) days of the date the judgment was entered. *See* FED. R. CIV. P. 59(b). After a jury trial, and new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." *Id.* 59(a)(1)(A). Courts have granted motions for a new trial where: (1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury. *See Maylie v. Nat'l R.R. Passenger Corp.,* 791 F. Supp. 477,

4

480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992). The decision to grant a new trial is left to the sound discretion of the trial judge. *See Blackiston v. Johnson,* No. 91-5111, 1995 WL 563834, at *1 (E.D. Pa. 1995), *aff'd* 91 F.3d 122 (3d Cir. 1996), *cert. denied* 519 U.S. 953 (1996). Where the evidence is in conflict and subject to two or more interpretations, the trial judge should be reluctant to grant a new trial. *See Klein v. Hollings,* 992 F.2d 1285, 1295 (3d Cir. 1993).

## III. Remittitur

Under Rule 59(e), motions "to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." FED. R. CIV. PRO. 59(e). "The use of remittitur is committed to the sound discretion of the district court judge." *Hall v. Pennsylvania Department of Corrections*, No. 3:02-cv-1255, 2006 U.S. Dist. Lexis 68670, *66 (M.D.Pa. 2006) (citing *Evans*, 272 F.3d at 354). In determining an appropriate award, the prudent course is to evaluate the record in light of damage awards . . . rendered in other cases." *Id*. (citing *Delli Santi v. CNA Insurane Cos.*, 88 F.3d 192, 206 (3d Cir. 1996)). "The means employed should enable the Court to attain its objective of setting damages at the 'maximum recovery that does not shock the judicial conscience.'" *Id.* at *66-*67 (quoting *Evans*, 273 F.3d at 355).

## DISCUSSION

## I. Post-Trial Motions

Defendants' post-trial motion contains three separate legal theories: (1) Defendants should be granted Judgment as a Matter of Law; (2) Defendants should be granted a new

trial; (3) the compensatory damage award should be remitted to one (1) dollar. The Court will consider each of these three arguments.

    A. Renewed Judgment as Matter of Law

During the trial, Defendants raised Rule 50 motions for judgment as a matter of law as to each of the five current arguments. (Trial Tr. vol. 4, 67:8-84:11.) Therefore, pursuant to Rule 50(b), the Court may now reconsider the legal questions raised by those arguments.

    1. Insufficient Evidence of Property Interest

Defendants first argue that there was insufficient evidence that Dee had a protected property interest after being suspended with pay for a brief period. This argument was specifically rejected by the Third Circuit Court of Appeals. *Dee v. Borough of Dunmore*, 549 F.3d 225, 232 (3d Cir. 2008). Nothing at trial altered this conclusion; the evidence at trial demonstrated exactly what was alleged, that Dee was suspended with pay for a brief period. Defendants' Rule 50 motion on this issue will be denied.

    2. Insufficient Evidence of Due Process Violation

Defendants next argue that there was insufficient evidence that Dee's procedural due process rights were violated because his suspension was necessary as an emergency. It is true that an emergency situation could excuse the Defendants' failure to have a pre-deprivation hearing. *Bd. of Regents v. Roth*, 408 U.S. 564, 570 n. 7 ("it is fundamental that except in emergency situations . . . due process requires . . . notice and opportunity for [a] hearing appropriate to the nature of the case *before* the termination"). Defendants' argument, however, assumes that there *was* an emergency situation. While the Defendants asserted that there was an emergency (Trial Tr. vol. 2, 9:7-8; Trial Tr. vol.

4, 178:21-179:2), the jury was entitled not to believe their testimony. The question of whether the amount of procedure provided to Dee was appropriate was an issue for the jury to decide. The Court properly instructed the jury to use the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and the jury reasonably concluded that their was insufficient process given to Dee before he was suspended. Defendants' Rule 50 motion on this issue will be denied.

       3. Insufficient Evidence Against Defendant Loftus

Defendants also argue that there was insufficient evidence that Defendant Loftus violated Dee's due process rights because Loftus did not have the power to suspend Dee. Defendants correctly argue that liability under 42 U.S.C. § 1983 requires personal involvement by the defendant in the alleged acts. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs") (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n. 3 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d at 1207). While Loftus may not have suspended Dee, there was a great deal of evidence at trial as to Loftus's personal involvement in investigating and presenting materials to the Dunmore Borough Council. I find that as a matter of law there was sufficient evidence for the jury to find Loftus had personal knowledge and involvement in this violation. Defendants' Rule 50 motion on this issue will be denied.

4. Insufficient Evidence to Support Punitive Damages

Defendants next argue that there was insufficient evidence to support the jury's award of punitive damages. I agree. "A jury may award punitive damages when it finds reckless, callous, intentional or malicious conduct." *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006). "[T]he defendant's conduct must be, at a minimum, reckless or callous." *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). "Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive." *Id.* The evidence at trial illustrated that while the Defendants intentionally suspended Dee, they did so believing he might be unqualified (Trial Tr. vol. 4, 130:19-131:1), they acted only after consulting their solicitor (Trial Tr. vol. 4, 130:14-18), they suspended Dee with pay (Trial Tr. vol. 3, 63:2-12), and they promptly provided a hearing (Trial Tr. vol. 3, 66:1-2). There was no evidence that Dee was specifically singled out by the Defendants (Trial Tr. vol. 4, 90:17-19), that any of the Defendants had any sort of animus against Dee (Trial Tr. vol. 4, 93:23-25), or that they had any evil motive for suspending him (Trial Tr. vol. 4, 178:21-179:2). At best, the evidence demonstrated that the Defendants were negligent in their investigation and prematurely suspended Dee without first providing a hearing. I find that the evidence presented at trial does not support the jury's award of punitive damages. Therefore, I will grant Defendants' Rule 50 motion on this issue and will vacate the jury's award of punitive damages.

5. Insufficient Evidence to Support Compensatory Damages

Defendants' final argument in their motion for judgment as a matter of law is that there was insufficient evidence of compensatory damages and therefore judgment should be entered in their favor. Even if Defendants are correct that there was insufficient

8

evidence of compensatory damages, judgment as a matter of law for the Defendants would be inappropriate because nominal damages would be awarded. *See Carey v. Piphus*, 435 U.S. 247, 267 (1978) ("denial of procedural due process should be actionable for nominal damages without proof of actual injury"). Defendants motion for judgment as a matter of law on this issue will be denied.

B. New Trial

In addition to the renewed motion for judgment as a matter of law, Defendants also raise three arguments pursuant to Rule 59 for a new trial.[2]

1. Error of Law

Defendants argue that this Court erred as a matter of law when it permitted lay witness testimony as to Dee's blood pressure from Patricia Dee, Dee's mother (Trial Tr. vol. 3, 111:23-113:16), and Patty Rusinko, a nurse at the clinic Dee attended after suspension (Trial Tr. vol. 4, 11:15-20). "Lay opinion testimony is permitted only where the 'personal knowledge, rational basis, and helpfulness standards of Rule 701 are met,' and the testimony does not concern scientific, technical, or specialized knowledge reserved for expert witnesses." *Salisbury Real Holdings II, LLC v. North Coventry Township*, No. 05-CV-04781, 2006 U.S. Dist. LEXIS 36710, *4 (E.D.Pa. 2006) (quoting *Asplundh Manufacturing Division v. Benton Harbor Engineering*, 57 F.3d 1190, 1198 (3d Cir. 1995)) (citing FED. R. EVID. 701). Such requirements "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of

---

[2] Defendants also argue that the amount of the damage award warrants a new trial. This argument is addressed below at Part I.C. along with Defendants' motion for remittitur.

9

proffering an expert in lay witness clothing." FED. R. EVID. 701 Advisory Committee's Note (2000 amendments). The Court admitted their testimony as to Dee's blood pressure because the measurement of blood pressure is sufficiently common that there was no need for the specialized knowledge of an expert witness. While Defendants are correct that a lay witness is not qualified to make a medical diagnosis, Defendants cite no authority, and I find none, stating that a lay witness is not qualified to testify to observed blood pressure measurements. Regardless, the admission of such testimony did not prejudice the Defendants because the testimony only reinforced Dee's uncontested testimony that he became very upset following the suspension and that he had slightly elevated blood pressure. (Trial Tr. vol. 3, 38:5-6; Trial Tr. vol. 3, 113:19-21.) Defendants motion on this issue will be denied.

2. Verdict Against Clear Weight of the Evidence

Defendants argue that the verdict was against the clear weight of the evidence. "New trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Greenleaf*, 174 F.3d at 366 (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)). The Third Circuit Court of Appeals has held that "a District Court reviewing a jury verdict has an 'obligation. . . to uphold the jury's award if there exists a reasonable basis to do so.'" *Evans v. Port Authority of New York & New Jersey*, 273 F.3d 346, 351-352 (3d Cir. 2001) (quoting *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989). In order to establish a claim for violation of procedural due process, a plaintiff must show: (1) a constitutionally protected interest in life, liberty, or property; (2)

governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation. *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972). As noted above, as a matter of law Dee had a protected property interest in his employment. *Dee v. Borough of Dunmore*, 549 F.3d 225, 232 (3d Cir. 2008). There was evidence presented at trial that he was deprived of that interest without a pre-deprivation hearing. (Trial Tr. vol. 4, 177:4-18.) As noted above, while Defendants argued there was an emergency situation (Trial Tr. vol. 2, 9:7-8), the jury, applying balancing test articulated in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), reasonably determined that insufficient process was provided to Dee. Because the jury verdict finding a violation of Dee's due process rights was not against the clear weight of the evidence, Defendants' motion for a new trial on this issue will be denied.

    3. Misconduct of Counsel

Defendants also argue that the misconduct of Plaintiff's counsel during the first trial warrants granting a second trial. As stated above, a new trial may be granted when counsel engaged in improper conduct that had a prejudicial effect on the jury. *See Maylie v. Nat'l R.R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992). While the record demonstrates a number of questions which were objected to as inappropriate, the Court sustained each objection as was appropriate. The jury was also instructed to disregard any material which should not have been presented. After a review of the record, I find that the conduct of Plaintiff's counsel did not prejudice the Defendants. Similarly, I find that the Court's denial of Defendants' motion for a jury instruction regarding this issue was proper, as any instruction would have unnecessarily reinforced any inappropriate conduct. And even if this Court erred in failing to give such

11

an instruction, the lack of an instruction falls far short of being prejudicial as required to grant a new trial. *Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 275 (3d Cir. 1995). Defendants' motion for a new trial on this issue will be denied.

    C. Remittitur

Defendants argue that this Court should remit Plaintiff's compensatory damages from $150,000 to one (1) dollar. Damages are not presumed to follow from every deprivation of procedural due process. *Carey v. Piphus*, 435 U.S. 247, 263 (1977). If there is no evidence of actual injury, then plaintiff who suffers a violation of their procedural due process rights should be able to recover nominal damages of one (1) dollar. *Id.* at 267. "[T]he court may not vacate or reduce the award merely because it would have granted a lesser amount of damages." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989). To alter a jury verdict, the jury's award "must be so unreasonable as to offend the conscience of the Court." *Id.* (citation omitted). Because there was no evidence of lost wages or benefits, lost reputation, or medical expenses, the only possible source for the jury's award of compensatory damages was based upon evidence of Dee's emotional distress. To evaluate whether remittitur is appropriate, it is necessary to examine the awards permitted for emotional distress in similar cases. *Gumbs v. Puebo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).

When there is little or no evidence presented demonstrating emotional distress, courts have been willing to remit entire compensatory damage awards. In *Spence v. Board of Education*, 806 F.2d 1198 (3d Cir. 1986), the Third Circuit Court of Appeals considered an award of compensatory damages for emotional distress under the plaintiff's claim of first amendment retaliation. *Spence*, 806 F.2d at 1199. The court rejected

plaintiff's argument that emotional damages could be presumed. *Id.* at 1200. At trial, the evidence of emotional distress consisted mainly of "plaintiff's testimony that she was depressed and humiliated . . . and that she had lost her motive to be creative." *Id.* at 1201. The district court ordered the entire award of $22,060 be remitted based upon its finding that "the award of damages for emotional distress was wholly speculative given the limited quality and quantity of proof that plaintiff submitted on the issue." *Id.* at 1201 (quotation omitted). The Third Circuit Court of Appeals affirmed the remittitur of the entire award for emotional damages holding that the district court did not abuse its discretion when determining that the evidence of emotional distress was "too speculative." *Id.*; *see, e.g. Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1120-22 (3d. Cir. 1988) (affirming remittitur of entire $15,000 emotional distress award where only evidence was that plaintiff's testimony that he "had been done wrong" and that he was "very upset").

When evidence of emotional distress demonstrates life-long changes, courts have permitted compensatory awards significantly higher the award in the present case. In *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565 (3d Cir. 2002), the Third Circuit Court of Appeals considered a jury award including emotional distress damages under plaintiff's claim for discrimination based upon disability. *Gagliardo*, 311 F.3d at 567. The jury found in favor of the plaintiff on her claim that her employer discriminated against her as a result of her Multiple Sclerosis. *Id.* at 568. The jury awarded $1.55 million in damages for emotional distress after hearing evidence that the discrimination had a "worsening effect on her life" and transformed her "from a happy and confident person to one who was withdrawn and indecisive." *Id.* at 573-74. The Third Circuit Court of Appeals affirmed the district court's decision to permit the verdict to stand. *Id.* at 574. The Third

13

Circuit Court of Appeals affirmed a similar verdict in *Bolden v. Southeastern Pennsylvania Transportation Authority*, 21 F.3d 29 (3d Cir. 1994). In that case, plaintiff presented evidence that his employer impermissibly terminated him for refusing to take a drug test. *Id.* at 30. During a subsequent trial for damages, the jury awarded $250,001 in compensatory damages for emotional distress and harm to plaintiff's reputation. *Id.* at 31. The district court denied the defendants motion for remittitur, finding that the evidence presented was sufficient. *Id.* The Third Circuit Court of Appeals held that the district court did not abuse its discretion because the jury award was supported by testimony from the plaintiff, two of his friends, and his wife and daughter who "testified that he had changed a great deal in the wake of the drug test." *Id.* at 33. The court distinguished its holding in *Spence*, saying that while there was no evidence of damage to the plaintiff's reputation or evidence of physical effects as was the case in *Spence*, in *Bolden* there was evidence of emotional distress beyond the loss of reputation. *Id.*

When there is some evidence of emotional distress, but no evidence of long-term or lasting effects, courts have permitted compensatory damage awards of approximately $50,000. In *Glass v. Snelbaker*, No. 05-1971, 2008 U.S. Dist. LEXIS 71241 (D.N.J. Sept. 17, 2008), the plaintiff sought emotional distress damages under his claim for first amendment retaliation. *Glass*, 2008 U.S. Dist. LEXIS 71241, at \*3. Plaintiff was the Deputy Chief in charge of the Special Operations Division of the Atlantic City Police Department overseeing the SWAT team, vice squad, and tactical team. *Id.* at \*4. In retaliation for his speech, plaintiff was transferred out of this prestigious position and was placed in charge of the Support Services. *Id.* at \*5. The jury awarded $250,000 for mental and emotional harm, along with additional damages for lost wages and benefits.

14

*Id.* at *11. In support of this award, plaintiff testified that as a result of the constitutional violation he felt humiliated and emotionally devastated. *Id.* at *72. There was also evidence that plaintiff was prescribed additional medication to control his pre-existing high blood pressure, and that plaintiff was told that the elevation of blood pressure was due to stress. *Id.* at *75. There was no evidence, however, that he suffered any lasting emotional distress or other non-economic injury. *Id.* Plaintiff continued going to work as before the transfer and reported no changes in sleep habits or other emotional effects. *Id.* The evidence also did not demonstrate any immediate financial stress on the plaintiff because his salary and benefits remained unchanged. *Id.* And despite the potential for harm to plaintiff's reputation, the evidence at trial demonstrated that plaintiff's reputation in the police department did not suffer. *Id.* at *76. In light of this evidence, the district court held that the jury's award of $250,000 was shocking to the judicial conscience, and determined that $50,000 was the highest amount supported by the evidence. *Id.* at *80.[3]

In light of the evidence presented at trial and the aforementioned precedents, I find that remittitur is appropriate here. As a threshold matter, I disagree with Defendants there

---

[3]Other courts that have considered the maximum appropriate recovery based upon similar evidence of emotional distress have also permitted recovery of approximately $50,000. *See, e.g.*, *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989) (ordered reduction to no greater than $50,000 for emotional distress on testimony of plaintiff and wife that violation was stressful);*Wade v. Orange County Sheriff's Office*, 844 F.2d 951 (2d Cir. 1988) (upheld award of $50,000 to employee subjected to racially motivated humiliation at work, including public embarrassment at publication in newspaper); *Diana v. Oliphant*, No. 05-cv-2338, 2009 U.S. Dist. LEXIS 11250, at *47 (M.D. Pa. Feb. 13, 2009) (citing *Glass* as persuasive and granting remittitur to $50,000 for comparable evidence on claim of emotional distress); *Niebur v. Town of Cicero*, 212 F.Supp. 2d 790 (N.D. Ill. 2002) (upheld $50,000 in emotional distress damages for violations of police chief's due process rights arising from suspension and termination, and publication of false charges).

was no evidence in support of compensatory damages. There was evidence that Dee suffered emotional distress (Trial Tr. vol. 3, 38:5-13) and elevated blood pressure (Trial Tr. vol. 4, 18:18-19:18) for at least a few days following the suspension. This evidence is greater than that presented in *Spence* or *Gunby*, and is sufficient to support a verdict including some compensatory damages. The amount awarded in the present action is, however, shocking to the judicial conscience in comparison to the precedents discussed above. The evidence presented in this case is distinguishable from the evidence of "life-altering" distress that supported larger verdicts in *Gagliardo* and *Bolden*. In each of those cases, there was evidence of a lasting change in medical condition (*Gagliardo*, 311 F.3d at 573-74) or personality (*Bolden*, 21 F.3d at 33). Here there was no evidence that Dee was changed in any lasting way; he continued his employment with the Dunmore Fire Department and his blood pressure returned to a normal range within a few days.

I find that the evidence presented in this case is most similar to the evidence presented in *Glass*. Dee, as the deputy of the fire department, suffered emotional distress and feared damage to his reputation as a result of a constitutional violation. As in *Glass*, Dee had a history of high blood pressure which became elevated during the time period immediately following the violation (Trial Tr. vol. 4, 11:15-20), and as in *Glass*, Dee suffered no loss of benefits, seniority, or pay which would have contributed to his emotional distress (Trial Tr. vol. 3, 63:2-12, 66:14-16). Also similar to *Glass*, there was no evidence at trial that Dee suffered any loss of reputation among his peers. The testimony of Dee's humiliation and stress, along with the testimony as to his temporarily elevated blood pressure, provide the only basis for the jury's award of emotional distress damages. I find that an award of $50,000 is the highest possible recovery that would no

longer be shocking to the judicial conscience based upon the evidence presented at trial, and therefore that a remittitur of $100,000 is appropriate. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 355 (3d Cir. 2001) ("remittitur should be set at the 'maximum recovery that does not shock the judicial conscience'") (quoting *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 774 (3d Cir. 1987)). Defendants' motion for remittitur will be granted, but their request to remit to one (1) dollar will be denied.

## II. Motion to Stay

Defendants filed a motion to stay proceedings to enforce the judgment pending the disposition of their post-trial motions. (Doc. 101.) Because Defendants' post-trial motions are resolved as discussed above, I will deny this motion as moot.

## CONCLUSION

For the reasons discussed above, I will grant the Defendants' post-trial motion in part, and deny it in part. Specifically, I will grant judgment as a matter of law to the Defendants on the issue of punitive damages because there was insufficient evidence presented at trial to support the jury's award. I will also remit $100,000 of Plaintiff's compensatory damages, leaving a recovery of $50,000. As to the remainder, Defendants' post-trial motions will be denied. Defendants' motion to stay will be denied as moot.

An appropriate order follows.

| April 21, 2010 | /s/ A. Richard Captuo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT K. DEE, JR.,

    Plaintiff,

v.

BOROUGH OF DUNMORE, et al.,

    Defendants.

CIVIL ACTION NO. 05-CV-1342

(JUDGE CAPUTO)

## ORDER

**NOW**, this  21st  of April, 2010, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for Judgment as a Matter of Law, Motion for a New Trial, and Motion to Alter Judgement (Doc. 100) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (a) Defendants' motion for judgment as a matter of law on punitive damages is **GRANTED**, and the portion of the judgment (Doc. 95) awarding punitive damages is **VACATED**.

    (b) Defendants' motion for a remittitur is **GRANTED**. The Plaintiff shall **REMIT** $100,000 of the compensatory damage award. Should the Plaintiff refuse to accept $50,000 in compensatory damages, a new trial on the issue of compensatory damages shall be conducted.

    (c) As to the reminder, the motion is **DENIED**.

(2) Defendants' Motion to Stay Proceedings to Enforce Judgment Pending Disposition of Post Trial Motions is **DENIED AS MOOT**.

    /s/ A. Richard Caputo
    A. Richard Caputo
    United States District Judge