**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT K. DEE, JR.,

    Plaintiff,

        v.

BOROUGH OF DUNMORE, *et al.*,

    Defendants.

CASE NO. 3:05-CV-1342

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Plaintiff Robert K. Dee, Jr.'s Motion for Attorney's Fees and Costs (Doc. 190) and Motion for Defense Counsel's Attorney Time Records and Attorney Billing Invoices and Statements (Doc. 192). For the reasons that follow, Dee's Motion for Attorney Fees and Costs will be granted in part and his Motion for Defense Counsel's Attorney Time Records and Attorney Billing Invoices and Statements will be denied. Dee will be awarded $6,938.56 in costs and $60,000.00 in fees for his counsel and her legal assistants and legal researchers.

## BACKGROUND

Plaintiff Robert Dee brought this action against the Borough of Dunmore, Borough Manager Joseph Loftus, and Borough Councilmen Michael Cummings, Thomas Hennigan, Joseph Talutto, Frank Padula, and Leonard Verrastro. On January 7, 2010, a jury found that the Defendants violated Dee's Fourteenth Amendment due process rights by suspending him from his employment as a borough firefighter without notice, explanation of the evidence against him, or an opportunity to rebut the allegations that he was unfit to serve after eighteen years of service. The jury also determined that the Defendants were not liable on Dee's First Amendment "stigma-plus" claim and his state law claims of defamation, false

light, and publicity to private life, all of which were related to the publication of his suspension. The jury awarded Dee $150,000.00 in compensatory damages and $6,000.00 in punitive damages. (Doc. 93.)

Following the trial, the Defendants moved for a remittitur, which the Court granted. (Doc. 120 at 12–17.) The Court reduced the jury's award for compensatory damages from $150,000.00 to $50,000.00 and dismissed the $6,000.00 punitive damage award.[1] (*Id.*) Dee rejected the remittitur (Doc. 127) and the parties proceeded to a second jury trial solely on the issue of compensatory damages, which was originally scheduled for October 19, 2010 (Doc. 141) but commenced in April 2011 (Docs. 150, 152). On October 4, 2010, the Defendants made an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68 to Dee in the amount of $60,000.00. (Doc. 68, Ex. A.) At the second trial, the jury awarded Dee $47,500.00 in compensatory damages. (Doc. 173.)

Dee filed his Motion for Attorney Fees and Costs (Doc. 190) and Motion for Defense Counsel's Attorney Time Records and Attorney Billing Invoices and Statements (Doc. 192) on May 7, 2012. The motions have been fully briefed and are now ready for disposition.

## DISCUSSION

### I. Motion for Defense Counsels' Time Records and Billing Invoices (Doc. 192)

Dee seeks to compel the Defendants to produce their attorney's time records and billing statements due to their opposition to his motion for attorney's fees and costs. (Doc. 192.) Dee asserts that compelling the Defendants' counsel, Karoline Mehalchick, Esq., to produce her time records and billing invoices will assist the Court in determining a fee award

---

[1] This decision was upheld by the United States Court of Appeals for the Third Circuit. *See Dee v. Borough of Dunmore*, 474 F. App'x 85 (3d Cir. 2012).

for his counsel, Cynthia Pollick, Esq. (Doc. 193 at 3.) He further contends that fairness requires Attorney Mehalchick to do so because Attorney Pollick had to do the same to answer the Defendants' challenges to his motion for attorney's fees and costs. (Doc. 200 at 3.) In response, the Defendants claim that inquiring into Attorney Mehalchick's time records and billing statements, which have little to no bearing on the reasonableness of the time spent by Attorney Pollick on this matter, will unnecessarily protract this case further. (Doc. 198 at 7.)

"The Third Circuit Court of Appeals has recognized that evidence of fees and expenditures of other parties may be relevant to the issue of the reasonableness of the petitioner's fees and leaves questions of discovery on this issue to the informed discretion of the district court." *Coalition to Save Our Children v. State Bd. of Educ.*, 143 F.R.D. 61, 63 (D. Del. 1992) (citing *In Re Fine Paper Antitrust Litigation*, 751 F.2d 562, 587 (3d Cir. 1984)). However, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)

Dee's request for Attorney Mehalchick's time records and billing statements will be denied. Only two of the objections to Dee's motion for attorney's fees challenge time spent on particular tasks as excessive: the 24.5 hours Attorney Pollick spent preparing for and attending oral argument before the Third Circuit Court of Appeals and the 35 hours her legal researchers spent researching remittitur for an appellate brief. (Doc. 197 at 15–16; Doc. 198 at 6–7.) The Defendants have disclosed that Attorney Mehalchick billed 8.5 hours for preparing for and attending appellate argument and also state that they do not have time entries solely devoted to researching remittitur or utilize legal researchers. (Doc. 197 at 15–16.) Instead, the Defendants' objections focus on the reasonableness of

3

the hourly rate sought by Attorney Pollick and whether their offer of judgment precludes Dee from recovering fees and costs incurred after the date of the offer. (*Id.* at 9–10, 18–20.) As such, the number of hours billed by Attorney Mehalchick for litigating this case has little relevance to the Defendants' objections to Attorney Pollick's time records or hourly rate. *See Samuel v. Univ. of Pittsburgh*, 80 F.R.D. 293, 294 (W.D. Pa. 1978) ("[T]he number of hours required by opposing counsel to defend a claim has little relevance to the reasonableness of the number of hours which plaintiffs' counsel devoted to pursuing a cause of action on behalf of a plaintiff in a given case.") Therefore, Dee's Motion for Defense Counsel's Attorney Time Records and Attorney Billing Invoices and Statements (Doc. 192) will be denied.

## II. Motion for Attorney's Fees and Costs (Doc. 190)

As the prevailing party in his § 1983 suit, Dee has requested costs in the amount of $10,427.43, attorney's fees in the amount of $183,060.00, and $19,582.50 for legal assistants' fees and $27,520.00 in legal researchers' fees. (Doc. 190 at ¶¶ 8–9, 11.) He also suggests that the award be enhanced by 50%. (*Id.* at ¶ 12.)

The Court may award reasonable attorney's fees and costs to the prevailing parties in § 1983 cases. *See* 42 U.S.C. § 1988(b). Plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley*, 461 U.S. at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)). However, "[t]his is a generous formation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Id.*

The starting point for a court's determination of reasonable attorney's fees is the

lodestar calculation, which entails multiplying the number of hours reasonably expended by each attorney by a reasonable hourly rate. *See id.* The party seeking fees has the initial burden of presenting evidence that the claimed rates and amounts of time are reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564 (1986). Once the fee applicant has made this initial showing, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Id.* (quoting *Blum v. Stenson,* 465 U.S. 886, 897 (1984)). The opposing party then has the burden of making specific objections to the proposed fee by affidavit or brief. *See Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990). In considering the objections, the district court has significant discretion to adjust the lodestar downwards. *Id.*

The first step in the lodestar calculation is the determination of the number of hours reasonably expended. The court begins with the claimed hours for which the applicant has evidentiary support, and then makes deductions, if necessary, as follows:

> The district court should exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." *Institutionalized Juveniles [v. Sec'y of Pub. Wellfare],* 758 F.2d [897, 919 (3d Cir. 1985)] (quoting *Hensley,* 461 U.S. at 440). The court also can deduct hours when the fee petition inadequately documents the hours claimed. *Hensley,* 461 U.S. at 433.

*Id.* (citations omitted). In determining whether the number of hours claimed is reasonable, the court may divide the claimed hours according to the type of work performed. *See, e.g., Maldonado v. Houstoun,* 256 F.3d 181 (3d Cir. 2001). Hours that would not typically be billed to a client cannot be billed to an adversary. *See Pub. Interest Research Grp. of N.J., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir. 1995).

5

The second step in the lodestar determination is determining whether the claimed rates are reasonable. The court starts with the market rates prevailing at the time of the petition, which the party seeking fees has the burden of establishing by satisfactory evidence. *See Maldonado,* 256 F.3d 181; *Lanni v. State of N.J.,* 259 F.3d 146, 149 (3d. Cir. 2001). "[T]he court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode,* 892 F.2d at 1183. If there is evidence that the market has established different rates for different categories of legal work, the district court should assign the appropriate rate to each category. *See Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001).

The lodestar carries a strong presumption of reasonableness. *Id.* at 180. Once the lodestar has been determined, the court can adjust the lodestar downwards if the amount is not reasonable in light of the applicant's success—or more properly, his lack thereof—in the litigation. *Rode,* 892 F.2d at 1183. In certain rare instances, the lodestar may also be adjusted upwards to compensate counsel for exceptionally high quality work or for the risks associated with undertaking the litigation. *Id.* at 1184. The party seeking an adjustment has the burden of proving that it is appropriate, and if that burden is met, "the lodestar amount may be increased or decreased at the discretion of the District Court." *Lanni,* 259 F.3d at 149.

### A. Number of Hours Reasonably Expended

When determining if the hours spent on litigation were reasonable, the Court must "review the time charged, decide whether the hours claimed were reasonably expended

for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Research Grp. of N.J.*, 51 F.3d at 1188 (citation omitted).  The general guide for reasonableness is that "[h]ours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority.  *Hensley*, 461 U.S. at 434 (1983) (citation omitted).

To meet his initial burden of proving that requested fees are reasonable, the plaintiff must submit evidence of the hours worked that is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. Cnty. Ct. of Com. Pl.*, 89 F.3d 1031, 1037 (3d Cir. 1996).  To be specific enough, a petition must be "'fairly definite . . . as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations' . . .  However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted. . . .'" *Id.* at 1037–38 (quoting *Rode*, 892 F.2d at 1190).

Once the plaintiff has met this initial burden, "[t]he party opposing the fee award then has the burden to challenge the reasonableness of the requested fee . . .  with sufficient specificity to give the fee applicant notice of the objection." *E.E.O.C.  v. Fed. Express Corp.*, 537 F. Supp. 2d 700, 721 (M.D. Pa. 2005) (Kane, J.).  "[O]nce the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005), and the court "has considerable discretion to adjust the award in light of those objections." *Fed. Express Corp.*, 537 F. Supp. 2d at 721.

**1. Offer of Judgment**

As a threshold matter to the awarding of attorney's fees in this case, the Defendants object to the inclusion in such an award of any fees or costs incurred after October 4, 2010, the date of the Offer of Judgment (the "Offer"), because the $47,500.00 in compensatory damages that Dee received in the second trial was less than the $60,000.00 offered by the Defendants and rejected by Dee. (Doc. 197 at 22.) Dee counters that the Offer was defective because it was not received fourteen days before trial, contained a condition, and did not include an amount for attorney's fees and costs. (Doc. 199 at 12–15.)

> Federal Rule of Civil Procedure 68(a) provides:
>
> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

Fed. R. Civ. P. 68(a). The Supreme Court has explained that where the underlying statute defines "costs" to include attorney's fees, as 42 U.S.C. § 1988 does here, those fees are included as costs for purposes of Rule 68. *Marek v. Chesny*, 473 U.S. 1, 10 (1985). The Court noted that the "critical feature" of a Rule 68 offer is that it "allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued. In other words, the drafters' concern was not . . . with the particular components of offers, but with the judgments to be allowed against defendants." *Id.* at 6.

"If the judgment that the offeree finally obtains is not more favorable than the

8

unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed.

R. Civ. P. 68(d). Rule 68 requires the comparison of the offer to the judgment, and the

court looks to the language of the offer to determine what figures are added to the

judgment for the comparison. *Le v. Univ. of Pa.*, 321 F.3d 403, 409 (3d Cir. 2003).

Attorney Mehalchick sent the Offer to Attorney Pollick by certified mail on October

4, 2010. (Doc. 197, Ex. A.) The Offer states, in relevant part:

> 1. Pursuant to Rule 68 of the Federal Rules of Civil Procedure Plaintiff is hereby served with an offer to allow judgment to be taken against Defendants . . . in the amount of $60,000.00 (SIXTY THOUSAND DOLLARS) inclusive of all claims for damages for the causes of action set forth in the Plaintiff's pleadings in the within case and other claims, whether stated or unstated, which might have been brought in Plaintiff's Complaint.
>
> 2. This Offer of Judgment is made for the purposes specified in Rule 68 and is not to be construed as a judicial admission either that Defendants are liable in this action or that Plaintiff has suffered damages in any specific amount. This Offer of Judgment is conditioned upon the Plaintiff's acknowledgment that Defendants have made no admission of liability or wrongdoing.
>
> 3. In addition to the foregoing offer, Plaintiff may petition the Court for recovery of reasonable and necessary counsel fees and cost recoverable under 42 U.S.C. § 1988 in conjunction with the within civil action.
>
> 4. In accordance with Rule 68 of the Federal Rules of Civil Procedure, this Offer of Judgment will be deemed withdrawn unless accepted within fourteen (14) days of the date hereof. . . .

(Doc. 197, Ex. A.) Dee did not accept the Offer within the fourteen-day window.

Dee's objections as to the validity of the Offer are without merit. His claim that the

Offer was untimely fails because service of the Offer upon Attorney Pollick was complete

when Attorney Mehalchick sent the Offer on October 4, 2010, which was at least fourteen

days before trial was scheduled to begin on October 19, 2010. *See* Fed. R. Civ. P.

5(b)(2)(c) ("A paper is served . . . by . . . mailing it to the person's last known address – in

which event service is complete upon mailing.")  His position that the Offer was defective for containing a condition (that the Defendants would not admit to liability or that Dee suffered damages in any specific amount) also fails because a Rule 68 offer "can also disclaim liability while offering that judgment be entered as so specified."  12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3002 (2d ed. 1983) (hereinafter Wright & Miller).  Finally, his argument that the Offer was defective because it did not explicitly provide for fees and costs will be rejected because the Supreme Court has held that the offer of judgment need not specify separately the amounts to be applied to each item.  *See Marek*, 473 U.S. at 6–7 ("[I]t is immaterial whether the offer recites that costs are included, . . . specifies the amount the defendant is allowing for costs, or . . . refers to costs at all.  As long as the offer does not implicitly or explicitly provide that the judgment *not* include costs, a timely offer will be valid."); *see also* 12 Wright & Miller § 3002 ("[T]he defendant can specify he amount allowed for substantive relief and leave the determination of costs for later action by the court.").

As the Offer is valid, the Court must compare it to the judgment that Dee obtained. *Le*, 321 F.3d at 409.  If the judgment is not more favorable than the unaccepted Offer, Dee must pay the post-Offer costs that he incurred.  Fed. R. Civ. P. 68(d).  "If the offer is for a set amount in compensation and leaves costs for determination by the court, there is little problem of comparing that damage figure with the judgment."  12 Wright & Miller § 3006.1; *see also Le v. Univ. of Pa.*, 321 F.3d 403, 409 (3d Cir. 2003) (comparing final judgment of $35,000.00 plus costs to offer of $50,000.00 plus costs because a Rule 68 offer of judgment "for the total amount of $50,000, plus costs then accrued" stated an offer of $50,00 plus costs to be determined by the court).

10

More than two weeks before the second trial, the Defendants made an offer to allow judgment to be taken against them in the amount of $60,000.00 "inclusive of all claims for damages for the causes of action set forth in the Plaintiff's pleadings in the within case and other claims, whether stated or unstated, which might have been brought in Plaintiff's Complaint." (Doc. 197, Ex. A.) The Offer also provided that Dee "may petition the Court for recovery of reasonable and necessary counsel fees and cost[s] recoverable under 42 U.S.C. § 1988 in conjunction with the within civil action." (*Id.*) In the second trial, Dee obtained a judgment of $47,500.00. (Doc. 175.) The Offer, which was for the set amount of $60,000.00 and left costs to be determined by the Court, was more favorable than the $47,500.00 judgment obtained by Dee (which left costs to be determined by the Court pursuant to 42 U.S.C. § 1988). Because the Offer was more favorable than the judgment, the Defendants are not responsible for paying the costs and attorney's fees that Dee incurred after the Offer was made. See Fed. R. Civ. P. 68(d). Accordingly, Dee is precluded from recovering fees for the hours spent by Attorney Pollick and her legal assistants and researchers after October 4, 2010 as well as the $2,924.49 in costs accrued since then.

## 2. Hours Not Reasonably Expended

Defendants contend that Attorney Pollick's billing statements include entries for tasks that are not compensable in this matter and ask that any fee award make appropriate reductions for these improper entries. The district court is to exclude from its fee calculation hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434. The Court must, therefore, conduct a detailed review of Dee's requested fees and costs.

**a. Overlap with *Smith* Case**

At the time that Dee commenced this case, a similarly situated plaintiff, Edward Smith, brought a nearly identical action against Defendants in this Court.[2] The cases were combined for purposes of discovery, and accordingly, many of the attorney hours expended in the early stages of the two cases were performed to the benefit of both plaintiffs. In such cases, it is appropriate for the Court to treat the fees in the manner in which the clients would be treated if the clients were paying the fees directly. *Pub. Interest Research*, 51 F.3d at 1188.

In *Smith*, this Court determined that 64.1 hours submitted in that case were applicable to this matter. *Smith*, No. 05-CV-1343, 2008 WL 4542246, at *4 (M.D. Pa. Oct. 9, 2008). The Defendants argue that 88.2 hours of Attorney Pollick's submitted time overlaps with the *Smith* case and should be reduced by 50%. (Doc. 197 at 16.) The Court has reviewed the Defendants' specific objections and finds that the time submitted by Attorney Pollick includes numerous entries from 2005 through 2006 that represent 88.2 hours spent for the shared benefit of this case and the *Smith* case. The Court will reduce this overlapping time by 50% and deduct 44.1 hours from Dee's submitted hours.

**b. Inapplicable Hours**

Defendants also argue that Dee has requested attorney's fees for time that is inapplicable to his case. The contested time includes time entries for work on motions that were later withdrawn by Dee, entries for work unrelated to this case, entries that are vague, and entries for communications with the press.

_____

[2]     *See Smith v. Borough of Dunmore*, No. 05-CV-1343.

Defendants first note that several entries on Attorney Pollick's time records are vague and should be deleted from the hours used in the calculation of an appropriate attorney fee award in this case. (Doc. 197 at 12.) These entries relate to 2.7 hours of time. The Court has reviewed each entry identified as vague and finds that the entries do not meet the specificity standards articulated in *Washington*. *See Washington*, 89 F.3d 1037 (requiring evidence "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."). Accordingly, 2.7 hours will be deducted from Attorney Pollick's submitted time for purposes of calculating appropriate attorney's fees in this case.

Defendants next argue that Attorney Pollick's submitted time includes 21.1 hours related to work on motions that were later withdrawn by Dee. (Doc. 197 at 12.) On December 26, 2006, Dee made an unopposed Motion to Withdraw (Doc. 45) his Motion for Partial Summary Judgment (Doc. 22). Since the withdrawn motion had no bearing on the relief ultimately obtained by Dee, the Court finds that it is not appropriate to assess Defendants with the cost of preparing the motion and will deduct 21.1 hours from Attorney Pollick's submitted time. *See Smith*, 2008 WL 4542246, at *5.

Defendants also argue that 2.2 hours of submitted time should be subtracted from Dee's fee request because these time entries relate to press communications. (Doc. 197 at 13.) This Court has denied attorney compensation for time spent communicating with the press. *Carey v. City of Wilkes-Barre*, No. 05-CV-2093, 2011 WL 1900169, at *3 (M.D. Pa. May 19, 2011); *Lohman v. Duryea Borough*, No. 05-CV-1423, 2008 WL 2951070, at *4 (M.D. Pa. July 30, 2008). "In the absence of any case law supporting media contact as a legitimate compensable work product," *Carey*, 2011 WL 1900169, at

*3, the 2.2 hours will be deducted from Attorney Pollick's submitted time.

Defendants further submit that several entries on Attorney Pollick's time records are for 6.5 hours of work entirely unrelated to the present case, including 0.4 hours of work entirely for the benefit of the *Smith* case, 4.3 hours for work in a state court case which Attorney Pollick instituted on Dee's behalf, and 1.4 hours for work in cases in which Attorney Pollick represented plaintiffs in cases against Duryea Borough.  (Doc. 197 at 13.)  They also argue that the submitted time records improperly include entries for 0.4 hours spent communicating with Dee's mother and 1.0 hour spent preparing a response to a petition for an en banc hearing before the Third Circuit Court of Appeals, which is not permitted under Federal Rule of Appellate Procedure 35(e) unless the circuit court orders such a response.  (*Id.*)  The Court has reviewed each of the identified entries and finds that they have no relationship to the current case.  Because Attorney Pollick could not appropriately bill these charges to Dee, the Court will not assess them against the Defendants.  *Maldonado*, 256 F.3d at 184.  Therefore, the Court will deduct 7.9 hours from Attorney Pollick's submitted hours.

Finally, Defendants contend that 18.1 hours of submitted time should be subtracted from Dee's fee request because these entries solely relate to Dee's "stigma-plus," defamation, publicity given to a private life, or invasion of privacy claims—those which he did not recover on at trial.  (Doc. 197 at 13.)  Defendants continue that although Dee recovered on his procedural due process claim, which stemmed from his eight-day suspension, his unsuccessful claims all stemmed from the newspaper articles following the suspension and are therefore based on different facts and legal theories.  (*Id.* at 13–14.)  The Court agrees that the time spent exclusively pursuing the unsuccessful state

law and "stigma-plus" claims was not related to the success of Dee's due process claim, as the successful and unsuccessful claims are based on different facts and different causes of action. Accordingly, the Court will deduct 18.1 hours from Attorney Pollick's submitted hours.

In summary, the Court finds that 52.0 hours submitted by Attorney Pollick are inapplicable to this case and will not be considered in Dee's request for attorney's fees.

### c. Excessive Hours

Defendants further argue that a number of Attorney Pollick's time entries are excessive in light of the nature of the work performed.[3] In particular, the Defendants question Attorney Pollick's recorded time of 24.5 hours spent preparing for and attending oral argument before the Third Circuit Court of Appeals. (Doc. 197 at 15.) The Court has reviewed these entries and finds them excessive, especially in comparison to the 8.5 hours that Attorney Mehalchick billed for the same tasks. (*Id.* at 15–16.) The Court finds that 12.5 hours rather than 24.5 hours represents a reasonable amount of time to spend preparing for and attending appellate oral argument and will deduct 12.0 hours from Attorney Pollick's submitted time for these tasks.

### B. Reasonableness of Claimed Rates

To determine what fee is reasonable, the Court must apply a burdenshifting type

---

[3]     Although Defendants challenge the 35 hours that Attorney Pollick's legal assistants spent researching remittitur for an appellate brief (Doc. 197 at 16), these hours were spent in 2011, after the Offer was made. It is therefore unnecessary to fully address this objection, as these hours have already been excluded. However, the Court agrees with the Defendants that 35 hours is not a reasonable amount of time to spend on researching a narrow legal issue and would reduce these entries by 50%, thereby deducting an additional 17.5 hours from Attorney Pollick's time records.

of procedure.  *See Evans v. Port Auth. of N.Y.*, 273 F.3d 346, 361 (3d Cir. 2001).  First, "[t]he plaintiff bears the burden" of establishing a prima facie case by "producing sufficient evidence of what constitutes a reasonable market rate[.]"  *Id.*  A reasonable market rate is established "with reference to 'the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity.'"  *Id.* at 360–61 (quoting *Student Pub. Interest Research Grp. v. AT&T Bell Labs.*, 842 F.2d 1436, 1450 (3d Cir. 1988)).  "An attorney's usual billing rate is a good starting point for assessing reasonableness, though it is not dispositive."  *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 374 (3d Cir. 2004) (citing *Maldonado v. Houstoun,* 256 F.3d 181, 184–85 (3d Cir. 2001).  "To inform and assist the court in its exercise of discretion, the burden is one the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  That evidence often comes in the form of affidavits from other attorneys.  *See Evans*, 273 F.3d at 360–61.

Once the plaintiff has established his prima facie case, the defendant may contest the reasonableness of the rate with "appropriate record evidence."  *Id.* at 361.  If the defendant "seeks to raise a factual issue evidence—for example, a claim that the fee applicant's billing rate was lower than claimed—he or she must introduce affidavits averring the facts upon which the challenge is based."  *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989).  Notably, hourly rates that were set for a specific attorney in previous court decisions do not generally constitute record evidence, *Smith v.*

16

*Phila. Hous. Auth.*, 107 F.3d 223, 226 (3d Cir. 2001), unless those rates were set for the same attorney and for the same type of work over a contemporaneous period. *See Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 652 (3d Cir. 1986), *vacated on other grounds*, 483 U.S. 1015 (1987).

If the plaintiff fails to meet his prima facie case, this Court has the discretion to determine what award is reasonable. See *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001) ("Having rejected the prevailing party's evidence of rates, the District Court was free to affix an adjusted rate."). Otherwise, once the plaintiff has established a prima facie case for the requested hourly rate, the district court does not have the discretion to question or change the rate absent record evidence. *See Washington v. Phila. Cnty. Ct. of Com. Pl.*, 89 F.3d 1031, 1036 (3d Cir. 1996).

Dee's counsel, Attorney Pollick, seeks attorney's fees based on an hourly rate of $300.00. (Doc. 190 at ¶ 5; Doc. 190, Ex. H at ¶ 11.) Attorney Pollick, who is based in Pittston, Pennsylvania, has obtained a Master's Degree in Trial Advocacy and has operated a law practice that primarily focuses on civil rights matters for 12 years. (Doc. 190, Ex. H at ¶¶ 2, 9.) In an affidavit, she avers that $300.00 is a reasonable market rate because Barry Dyller, Esq., an attorney based in Wilkes-Barre, Pennsylvania who practices civil rights litigation, has an hourly rate of $375.00 and this Court has approved hourly fee rates of $300.00 for other civil rights lawyers. (*Id.* at ¶ 11.) She also offers a sworn declaration from Jonathan S. Comitz, Esq., an attorney based in Shavertown, Pennsylvania, who asserts that Attorney Pollick's hourly rate of $300.00 "is more than fair and reasonable for employment related litigation . . . based on her reputation,

persistence, track record, esteem and work ethic . . . ."  (Doc. 199, Ex. A at ¶ 13.)

In response, Defendants argue that Dee has not met his burden of producing satisfactory evidence that Attorney Pollick's requested hourly rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  (Doc. 197 at 9–10.)  They contend that an hourly rate of $215.00 would more than adequately compensate Attorney Pollick for her services in this matter and reference several civil rights cases from 2009 to 2011 in which this Court awarded her that rate.  (*Id.* at 10.)

Assuming, *arguendo*, that Dee has established a prima facie case for Attorney Pollick's requested rate, the Court believes, in light of the Defendants' record evidence, that the $300.00 hourly rate sought by Attorney Pollick is unreasonably high.  However, based on her experience in civil rights and employment discrimination cases, Attorney Pollick is entitled to an hourly rate greater than $215.00.[4]  Accordingly, the Court, in its discretion, finds $250.00 to be a reasonable hourly rate for Attorney Pollick in this case.

## C.  Lodestar Calculation

### 1.  Lodestar for Attorney Pollick

In order to calculate the lodestar, the Court must find the product of the reasonable hours times the reasonable fee.  After deducting inapplicable time, excessive time, overlapping time spent on the *Smith* case, and time spent after the Defendants' Offer,

---

[4]    *See Supinski v. UPS*, No. 06-CV-00793, 2012 WL 2905458, at *2 (M.D. Pa. July 16, 2012) (finding an hourly rate of $250.00 for Attorney Pollick to be reasonable in a Americans with Disabilities Act and Pennsylvania Human Relations Act case); *Carey v. City of Wilkes-Barre*, No. 05-CV-2093, 2011 WL 1900169, at *2 (M.D. Pa. May 19, 2011) (determining that an hourly rate of $225.00 for Attorney Pollick was reasonable in a § 1983 case), *aff'd*, 2012 WL 3608613 (3d Cir. 2012).

Attorney Pollick spent 370.85 recoverable hours on this case. Her reasonable hourly fee was found to be $250.00. Her lodestar is thus calculated to be $92,712.50.

### 2. Legal Assistants Lodestar

Dee also submits costs for work by legal assistants in the amount of $19,582.50. This amount reflects 261.10 hours billed at $75.00 per hour as suggested by Attorney Pollick. (Doc. 190, Ex. H at ¶ 13.) The Defendants to not dispute the suggested rate. However, after accounting for inapplicable time, overlapping time spent on the *Smith* case, and time spent after the Defendants' Offer, Attorney Pollick's legal assistants worked 234.70 hours that are recoverable in this case. Accordingly, the lodestar for Attorney Pollick's legal assistants is calculated to be $17,602.50.

### 3. Legal Researchers Lodestar

Dee further requests $27,520.00 for 275 hours of work performed by legal researchers in this case. This represents a rate of $100.00 per hour. (Doc. 190, Ex. H at ¶ 13.) Again, the Defendants do not dispute the suggested rate. After accounting for time spent after the Defendants' Offer, Attorney Pollick's legal researchers worked 129.95 hours that are recoverable. Thus, the Court finds that $12,995.00 is the appropriate lodestar amount for legal researcher work in this case.

### D. Other Considerations

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of 'results obtained.'" *Hensley*, 461 U.S. at 434. The Court will now consider these additional considerations.

### 1.  The Twelve *Johnson* Factors

A court may consider other factors besides the reasonable rate times reasonable hours to adjust the fee upwards or downwards.  *Hensley*, 461 U.S. at 434.  In *Hensley*, the Supreme Court held that "[t]he amount of the fee, of course, must be determined on the facts of each case.  On this issue the House Report simply refers to twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)."  *Id.* at 429–30.  The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430, n. 3 (citing *Johnson*, 488 F.2d at 717-719).  Many of these factors are subsumed in the rate times hours calculation, but they may be considered as part of a court's consideration of overall fees.  *Id.* at 434.  The *Hensley* Court noted that "the amount involved and the results obtained" is relevant to a fee award, and that "[t]he importance of this relationship is confirmed in varying degrees by other cases cited approvingly in the Senate Report."  *Id.* at 430.  The Supreme Court found that appropriate fees result when the fees "are adequate to attract competent counsel, but . . . do not produce windfalls to attorneys."  *Id.* at 430 n. 4.

### 2.  Apportionment

Defendants argue that the number of hours requested by Dee should be apportioned

based upon the number of successful claims. The *Hensley* Court considered a case where plaintiffs brought multiple claims in one lawsuit. *Hensley*, 461 U.S. at 434–35. The Court noted that a fee award should be limited when a lawsuit brings different claims of relief based upon different facts and legal theories. *Id.* Fees should be limited in such a case when the work on one claim is unrelated to the work on another claim. *Id.* A court would treat these claims as if they were raised in separate lawsuits. *Id.* But, the Court noted that some cases involve a common core of facts or are based on related legal theories. *Id.* at 435. In such a case, it would be difficult to divide the hours on a claim-by-claim basis. *Id.* The Court rejected a mathematical approach to reducing the fees by the ratio of claims on which the plaintiff prevailed. *Hensley*, 461 U.S. at 435 n. 11.

The Court noted that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 431. This excessive amount could arise "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* In explaining the possibility of an excessive fee recovery, the Court emphasized that the degree of success obtained is the most critical factor. *Id.* The appropriate adjustment to avoid excessive fees is left to the discretion of district courts. *Id.* at 436–37. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* This discretion simply must be exercised in light of the considerations identified by the Court. *Hensley*, 461 U.S. at 437.

While the Court declines to make any specific apportionment in the current case, it

will remain mindful of the number of claims brought and the number of claims on which Dee actually prevailed (*i.e.,* the "degree of success" factor) when determining the appropriate attorney's fee award in this case.

### E. The Court's Award of Fees

Attorney Pollick's lodestar was calculated to be $92,712.50. The lodestar for her legal assistants was calculated to be $17,602.50. The lodestar for her legal researchers was calculated to be $12,995.00. This totals $123,310.00. In this case, the Court finds that the lodestar, or the product of the reasonable rate times the reasonable hours, results in an excessive fee award. *Hensley*, 461 U.S. at 434. The degree of success obtained for Dee was not as great as Attorney Pollick claims. Although Dee recovered on his procedural due process claim, he did not prevail on his "stigma-plus" claim or state law tort claims of invasion of privacy, defamation, and publicity given to a private life. (Doc. 93.)

Attorney Pollick focuses on the fact that she received a jury verdict in her favor, but it appears to the Court that her client only prevailed on one claim and received a lesser amount from trial ($47, 500.00) than from accepting the Defendants' Offer ($60,00.00).[5] In this case, in which Dee's constitutional rights were violated by his eight-day suspension, the results obtained at trial do not justify an award of over $123,000.00 as calculated by the lodestar, and surely does not justify the requested fees of over $230,000.00.

The *Johnson* factors, as a whole, also justify a reduced award. The skill requisite to

---

[5] As this Court has previously considered a defendant's settlement offer in determining a plaintiff's attorney's fee award, see *Smith v. Borough of Dunmore*, No. 05-CV-1343, 2008 WL 4542246, at *12 (M.D. Pa. Oct. 9, 2008), it is appropriate for this Court to consider the Defendants' Rule 68 offer of judgment in determining Plaintiff's attorney's fee award in this case.

perform the services was not particularly rigorous, as Attorney Pollick often brings procedural due process claims, and such a claim is not a new or novel issue of law. The claims were not particularly difficult and were very similar to those in numerous cases Attorney Pollick has presented before this Court. Attorney Pollick did not demonstrate any special ability in the prosecution of this case. The case cannot be considered "undesirable," as there is no evidence that Dee was unable to attract other attorneys to represent him in this case. These factors weigh in favor of a downward departure from the lodestar.

Based upon the *Johnson* factors, including the results obtained factor, the Court finds that a downward departure from the lodestar is warranted, and Attorney will be awarded a total of $60,000 in fees for herself, her legal assistants, and her legal researchers.[6]

### F. Costs

Dee also seeks costs in the amount of $10,427.43, (Doc. 190 at ¶ 11), but the Court will only award compensable costs incurred before the Defendants' Offer was made. *See* Fed. R. Civ. P. 68(d). The Defendants argue that there are several entries that should be barred for vagueness, being unrelated to Dee's successful claim or to his case, or otherwise unrecoverable. (Doc. 197 at 14.) The Court has reviewed the bill of costs submitted by Attorney Pollilck (Doc. 190, Ex. E) and will address the Defendants' objections below.

### 1. Electronic Case Filing (ECF) Charges

Defendants object to $310.40 in costs claimed by Attorney Pollick for unspecified "ECF Charges" because there is no indication that these charges are related to this case.

---

[6]     The Court will deny Dee's request for a 50% enhancement of the award, as he has failed to produce any legal authority or record evidence in support of the proposition that "plaintiffs should be allowed enhancements when defendants fail to offer an amount of the verdict." (Doc. 191 at 7.)

(Doc. 197 at 14.)  In response, Dee argues that $255.36 of these charges were for accessing and printing the transcript from *Schlier v. Rice*, No. 04-CV-1863, a case previously before this Court, which was used in his motion for reconsideration.  (Doc. 199 at 8.)  Dee also contends that he "cannot control when ECF will charge him for material" and "any review of material on the ECF system was necessary to pursue this matter to victory." (*Id.*)  As the Court finds that Dee has not sufficiently shown that the unspecified "ECF Charges,"except for the $255.36 for the *Schlier* transcript, were necessary to this matter or related to this matter at all, $55.04 in "ECF Charges" will be deducted from the award of costs.

### 2.  Costs Related to State Court Action

Defendants also object to $250.55 in claimed filing costs and service fees that are associated with filing a state court action on Dee's behalf.  (Doc. 197 at 15.)  Dee responds that "[f]iling and service fee [sic] for the claims that this Court did not exercise supplemental jurisdiction to keep them alive, and was tried in this matter was reasonable and necessary since had the Third Circuit not ruled in our favor, we would have tried those claims in that forum."  (Doc. 199 at 8.)  Having reviewed Attorney Pollick's statement of costs, the Court finds that Dee has not sufficiently justified these costs, which are therefore unrecoverable in this matter.  Accordingly, $250.55 will be deducted from the award of costs.

### 3.  News Article

Defendants further object to $3.95 spent by Attorney Pollick for printing an unspecified news article.  (Doc. 197 at 15.)  Dee contends that "[o]btaining a news article to help with the prosecution of this case is reasonable."  (Doc. 199 at 8.)  The Court finds that Dee has failed to show that obtaining and printing this unspecified news article was necessary or related to

24

this matter at all and will deduct $3.95 from the award of costs.

### 4. Witness Fees

Finally, Defendants argue that the $120.00 in witness fees paid to Matthew Kemeny, a former reporter at the Scranton *Times-Tribune*, is not recoverable because his testimony was unrelated to Dee's successful claim. (Doc. 197 at 15.) The purpose of Mr. Kemeny's testimony was to establish who publicized Dee's suspension, and Dee did not recover on any claims related to the publication of his suspension. (Id.) Dee counters that witness fees for a witness who testified at trial are compensable and reasonable. (Doc. 199 at 8.) The Court finds that the $120.00 in witness fees will not be allowed, as "costs are apportioned between successful and unsuccessful claims just as attorneys' fees are." *Watcher v. Pottsville Area Emergency Med. Serv., Inc.*, 559 F. Supp. 2d 516, 536 (M.D. Pa. 2008).

In sum, the Court will deduct $429.54 from the costs sought by Dee. He will thus be awarded $6,938.56 in compensable costs incurred before the Defendants' Offer.

### CONCLUSION

For the above stated reasons, Dee's Motion for Attorney Fees and Costs (Doc. 190) will be granted in part and his Motion for Defense Counsel's Attorney Time Records and Attorney Billing Invoices and Statements (Doc. 192) will be denied. Dee's counsel will be awarded $60,000.00 in attorney's fees and Dee will be awarded $6,938.56 in costs. An appropriate order follows.


February 25, 2013       /s/ A. Richard Caputo
Date             A. Richard Caputo
               United States District Judge